THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE WALL AND HANOVER STREET REALTY COMPANY, Appellant, *v.* NATHAN L. MILLER, as Comptroller of the State of New York, Respondent.

TAX — FOREIGN CORPORATION OWNING, MANAGING AND RENTING OFFICE BUILDING IN THE CITY OF NEW YORK IS LIABLE TO LICENSE AND FRANCHISE TAX AS CORPORATION HAVING CAPITAL EMPLOYED WITHIN THE STATE. Where the charter of a corporation, organized under the laws of the State of New Jersey for the immediate object of taking title to land in the city of New York, on which is situated a valuable office building, the incorporators being the persons who owned the building as tenants in common, is broad enough to authorize unlimited dealing in real estate of every description any where within the United States, and in personal property of every name and nature, although the corporation has no surplus but has all of its capital invested in the property and employed in the care, management and renting of the building to numerous tenants and the collection of rents therefrom, from which it derives a net income devoted to dividends, it is engaged in carrying on business by the active use of capital and is, therefore, subject to the license and franchise tax imposed on foreign corporations doing business within the state by sections 181 and 182 of the Tax Law (L. 1896. ch. 908). *People ex rel. Niagara River Hydraulic Power Co.* v. *Roberts,* 157 N. Y. 676; *People ex rel. Fort George Realty Co.* v. *Miller,* 179 N. Y. 49, and *People ex rel. Singer Mfg. Co.* v. *Wemple,* 150 N. Y. 46, distinguished.

*People ex rel. Wall & Hanover St. Realty Co.* v. *Miller,* 98 App. Div. 584, affirmed.

(Argued January 11, 1905; decided April 25, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered

December 14, 1904, which modified and confirmed as modified a determination of the defendant fixing the amount of a franchise tax and of a license fee against the relator.

The relator is a corporation organized under the laws of the state of New Jersey, and the objects for which it was formed, as stated in its articles of incorporation, are "to acquire by purchase, lease, exchange or otherwise, lands or any interest therein, or any rights, easements or privileges appertaining thereto; to erect and construct buildings or structures of every description on any lands of the corporation, or to rebuild, enlarge, alter and improve structures, and generally to deal with and improve the property of the corporation; from time to time to sell, lease, mortgage or otherwise dispose of, the lands, buildings, structures, hereditaments and other property of the corporation, or any portion or portions thereof; to acquire by lease or purchase all such personal property as may be required by or useful to the corporation, *and to undertake the management, maintenance, sale and letting of all real or personal property of the corporation;* from time to time to issue bonds and secure the same by deeds of trust or mortgages upon the whole or any part of the property of the said corporation, and to sell said bonds for cash or in payment for property purchased or for any other corporate purposes, *and to carry on any other business which may seem to the board of directors of said corporation capable of being conveniently conducted in connection with the purposes above set forth, or calculated directly or indirectly to increase the profits of said corporation, or to enhance the value of its property or right;* and said corporation shall have power to conduct its business *and all parts thereof, and without limit to purchase, hold, mortgage, convey and lease* real or personal property outside of the State of New Jersey, and in all the several States and Territories of the United States of America, and particularly in the City of New York, in the State of New York."

The immediate object for which the relator was organized was to take title to land situate at the corner of Wall and

**330** People ex rel. Wall & H. St. R. Co. *v.* Miller. [April,

Points of counsel. [Vol. 181.

Hanover streets in the city of New York, which was then owned by thirty-two tenants in common, who became the incorporators of the relator. The title was conveyed to the relator for a consideration of $880,000, of which $440,000 was in the relator's capital stock issued for cash to the corporators, and the balance of $440,000 was paid by the issue of the relator's bonds which were taken by the corporators.

On July 28th, 1900, the relator obtained from the secretary of state a certificate authorizing it to do business within this state. On December 1st, 1901, the comptroller assessed upon the relator a license fee of $550 under section 181 of the Tax Law, being one-eighth of one per cent upon the amount of its capital stock, and a franchise tax of $1,320 under section 182 of the same statute, being one and one-half mills on the capital stock, for the two years ending October 31st, 1901, during which term a dividend of less than six per cent had been declared. Application for revision and resettlement of these taxes was made to the state comptroller and denied by him. Upon relator's appeal to the Appellate Division the franchise tax was apportioned and reduced, so as to cover only the actual period during which the relator had done business in this state (*People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51) and, as thus modified, the comptroller's determination was confirmed.

*Lucius H. Beers* and *Herbert C. Lakin* for appellant. The relator cannot be held liable to taxation because it possessed by its charter and by its permission to do business in this state powers which it did not actually use. (*People* v. *Am. Bell Tel. Co.*, 117 N. Y. 241.) The relator is not doing business or employing capital within the meaning of sections 181 and 182 of the Tax Law. (*People ex rel.* v. *Wemple*, 150 N. Y. 46; *People ex rel.* v. *Roberts*, 157 N. Y. 676; *People ex rel.* v. *Miller*, 179 N. Y. 49.)

*Julius M. Mayer*, Attorney-General (*Horace McGuire* of counsel), for respondent. The license fee was properly

1905.]  People ex rel. Wall & H. St. R. Co. *v.* Miller.  331

N. Y. Rep.]      Opinion of the Court, per Werner, J.

imposed.   (L. 1896, ch. 908, § 181; *People ex rel. v. Morgan*, 86 App. Div. 577.)   The tax was properly imposed. (L. 1896, ch. 908, § 182.)

Werner, J.   The question to be decided upon this appeal is narrow but troublesome.   The relator rests its claim to exemption from the license and franchise taxes thus far upheld against it, upon the authority of *People ex rel. Niagara River Hydraulic Co.* v. *Roberts* (157 N. Y. 676) and *People ex rel. Fort George Realty Co.* v. *Miller* (179 N. Y. 49).   It goes without saying that if the case at bar is not to be differentiated in substantial fact or circumstance from the cases cited, the latter must be held to be controlling, and that will, of course, end the argument in favor of the relator.   In each of the cases mentioned the corporations sought to be charged with a franchise tax were held to be free therefrom, on the ground that they were organized for the sole purpose of holding and owning lands, the capital to purchase which was not " employed within this state " within the meaning of the statute, but simply " invested " in the sense in which the latter term was used in *People ex rel. Singer Mfg. Co.* v. *Wemple* (150 N. Y. 46).

A comparison of the charters of those corporations with that of the relator, and a short reference to the peculiar circumstances under which each has been in operation, discloses, we think, such substantial differences between the apparent objects and purposes of the corporation at bar and the others referred to as to clearly distinguish the former from the latter, so far as the application of the Tax Law is concerned.

The Niagara River Hydraulic Co. was incorporated in 1832 under a special act (Chap. 116) giving it the right to purchase, hold, lease and convey real estate, but limiting such right to lands on " Squaw Island, at the junction of the Erie Canal with the Niagara River," and empowering it to build, sell or lease raceways, docks and buildings for hydraulic purposes, and to carry on manufacturing upon the same.   In 1896 that corporation was notified by the comptroller that, pursuant to chapter 542 of the Laws of 1880, it had been

assessed. for a tax amounting to $3,600, covering the full six-teen years during which the statute had been in operation. Upon proceedings to review the comptroller's determination it appeared that the land owned by the corporation consisted of a swamp in Squaw island in the Niagara river; that although the par value of its capital stock was $150,000 and the assessed value of its real estate was $125,000 the actual value of each was problematical, since no buildings or struc-tures had ever been erected, no business had ever been done by the corporators and no revenue or return had ever been derived from the land except an annual payment of $45.00 for the grass crop which grew upon it, and a payment of $8,000 for a strip of the land taken by the International Bridge Co. for the bridge erected by it. That was, therefore, the case of a corporation organized forty-eight years before the sections of the Tax Law referred to were enacted, and sixty-four years before the tax was levied, holding specific lands for certain limited purposes which were never exercised, and dur-ing the whole period paying real estate taxes on land assessed upon a valuation of $125,000, but, in fact, unimproved and unproductive.

The Fort George Realty Co. was incorporated in 1902 under the Business Corporations Law, with a stated capital stock of $100,000. In 1903 the comptroller notified the cor-poration that he had assessed against it a franchise tax of $149.10, based upon an appraisal of $99,400 as the value of its capital stock. Upon proceedings to review the comptrol-ler's determination it appeared, as shown by its certificate of incorporation, that the relator there was organized to buy, sell, mortgage, lease and exchange improved and unimproved real estate, and to build, construct and alter houses thereon. The incorporators were the owners, as tenants in common, of a parcel of unimproved and practically unproductive land, and the immediate purpose of organizing the corporation was to take title thereto and raise funds with which to pay taxes and assessments thereon, and the interest upon mortgages to which it was subject. The land had been owned by one

1905.] People ex rel. Wall & H. St. R. Co. *v.* Miller. 333

N. Y. Rep.] Opinion of the Court, per Werner, J.

Griffen, and the corporators were his heirs at law. After Griffen's death assessments accumulated to an amount aggregating between $60,000 and $70,000 and in that situation the parties were threatened with a foreclosure of one of the mortgages. To save the property from being sacrificed a new mortgage of $100,000 was made, the greater portion of the avails of which were used in paying these assessments and the interest on mortgages, and leaving only a small balance to meet future taxes, assessments and interest.

The corporate powers and the environment of the relator at bar are materially different. Its charter is broad enough to authorize unlimited dealing in real estate of every description anywhere within the United States, *and in personal property of every name and nature.* There is no kind of business in which it may not engage except, possibly, that of manufacturing. Its real estate is extremely valuable and productive, and is occupied by numerous tenants. It is obvious at a glance that the decision in the case of the Niagara River Hydraulic Co. is not an authority in the case at bar, because there was in the former a special and limited charter authorizing a specific purchase and use of designated real estate, under which nothing had been done subsequent to the original purchase of the land named therein, and that purchase had been consummated many years before the Tax Law under consideration was enacted.

The difference between the case of the *Fort George Realty Co.* and the case at bar is not so apparent, but there is, nevertheless, a distinction. Leaving out of consideration the special circumstances which were probably potential in shaping the decision in the *Fort George Realty Co.'s* case, and looking solely to the charters of the two corporations as indicating the possible scope of their operations, it is evident that if the relator cannot be taxed under sections 181 and 182 of the Tax Law, then it is impossible to tax any corporation under the same. The right to acquire and sell both real and personal property " *and to carry on any other business* which may seem to the board of directors of said corporation capable of being

conveniently conducted in connection with the purposes above set forth, *or calculated directly or indirectly to increase the profits of said corporation*, or to enhance the value of its property or right," is certainly broad enough to bring the relator within the terms of the statute.    The learned counsel for the relator argues that the right to tax a corporation depends, not upon the privileges derived from its charter or the law of its creation, but upon what it has actually done or attempted to do thereunder, and he cites the case of *People v. American Bell Telephone Co.* (117 N. Y. 241) in support of his contention.    That case, as we read it, simply holds that the question whether a foreign corporation " is doing business within this state," within the meaning of the law providing for the taxing of corporations, is to be determined not from the existence of unexercised powers reserved to it in con- tracts with other subsidiary corporations, but from the actual character of the business carried on.    When that case is critically examined it will appear that the business actually carried on was identical with that authorized by the law under which the corporation was organized.    And when we appeal to the reason of the thing it seems plain that the chartered privileges of a corporation as defined in its certificate of incor- poration, which is invariably framed in the language of the corporators, should be the index to its relations to the state, rather than the possibly sporadic and shifting exercise of any one or more of a larger number of the powers delegated to it. We are aware that the point now under discussion was not emphasized, and may have been overlooked, in the case of the *Fort George Realty Co.*, but the decision there was clearly a concession to special facts and equities that have no applica- tion here, and its doctrine cannot be extended without going to the limit of holding that no corporation, no matter what the expressed purposes of its organization may be, can be taxed under sections 181 and 182 of the Tax Law, so long as it deals only in real estate.    Such a decision would, it seems to us, contravene the plain language of the statue which pro- vides (sec. 181) that " every corporation " (with certain

enumerated exceptions) "authorized to do business under the general corporation law of this state  *  *  *  shall pay a license fee" to be computed as directed. And likewise in section 182 we find a provision that "every corporation  *  *  * organized  *  *  *  under the laws of any other state or country" shall pay the same tax for the privilege of exercising its corporate franchises or carrying on its business as a domestic corporation liable to a franchise tax. If the relator were a domestic corporation it would fall under the general provisions of section 182, unless it is within the exception laid down in the *Fort George Realty Co.'s* case, and we think it is not.

For these reasons the order of the Appellate Division should be affirmed, with costs.

VANN, J. (concurring). The statute commands in substance that every corporation, whether resident or non-resident, with certain exceptions which do not include the relator, shall pay to the comptroller each year a sum to be computed upon a certain basis for the privilege of exercising its corporate franchises or carrying on business in this state. (Tax Law, §§ 181, 182.) While the corporate powers of the relator according to its charter are very broad, even if we do not look at its unexercised powers but confine our attention to those actually used, there is ample warrant for the tax in question. The business carried on by it is the purchase, holding, leasing and management of a large office building in the borough of New York, for which it paid the sum of $880,000. The claim is made that the large amount thus paid for a building thus used is not capital employed within this state, but is an inactive investment and that the relator is not carrying on any business in this state. It does business in no other state and it has no surplus. While a foreign corporation may invest its surplus earnings in real property situate in this state and lease the same to third parties, so long as it does not occupy it or use it in transacting its ordinary business, the amount thus invested is apparently not subject to taxation as capital

336 People ex rel. Wall & H. St. R. Co. *v.* Miller. [April,

Concurring opinion, per Vann, J.          [Vol. 181.

employed in doing business. (*People ex rel. Singer Manfg. Co.* v. *Wemple*, 150 N. Y. 46.) When, however, it has no surplus and all its capital is placed in a single venture which requires active management and constitutes its sole business, such capital is employed in business within the fair meaning of the statute now in force, which is more comprehensive than any of its predecessors.

Two cases are relied upon by the relator, both extreme and neither like the one before us. In the earlier, certain land of the corporation was an unproductive swamp, not used to carry on any active business, but for sixty-four years had been held with the intention at some time of using it to carry on the business of building, selling or leasing raceways, docks and buildings for hydraulic purposes as well as the business of manufacturing. It had never been used for any of these purposes, nor for any active purpose. We held, adopting the opinion of the Appellate Division, that "the tax contemplated by the statute is upon the active use of its (the corporation's) capital in its corporate business, not upon the passive holding of it in the form of an unproductive investment." (*People ex rel. Niagara River Hydraulic Co.* v. *Roberts*, 30 App. Div. 180 ; 157 N. Y. 676.)

In the later case certain real property of some heirs at law, who held it as tenants in common, was unproductive, heavily mortgaged and overwhelmed with an accumulation of taxes during a long period. It was advertised for sale on account of the unpaid taxes, and one of the mortgagees threatened foreclosure. The heirs organized a corporation to carry the property until it could be sold, by refunding the mortgages and raising money to pay taxes and interest. No improvements were made, or active business carried on, and by the vote of a majority it was held a passive investment and not the employment of capital in business. (*People ex rel. Fort George Realty Co.* v. *Miller*, 179 N. Y. 49.)

The present case is utterly different in its facts and in the principle which governs the decision. The relator carries on the business of owning, leasing and managing an office build-

ing of great value situate on Wall street in the city of New York. It has no surplus and its entire capital is invested in this building at the commercial center of the country. Its property is highly improved and produces a net income devoted to dividends. It manages its property through agents, as all corporations must. The management of a large modern office building, such as that of the relator, is a business as much as manufacturing. It involves the leasing of offices, the collection of rents, the operation of elevators and a heating plant, the cleaning of offices, the lighting of halls, the making of repairs and changes to suit tenants and the active supervision of an extensive business with many details. If this is not carrying on business by the active use of capital invested therein it is difficult to see what is. The statute does not exempt a corporation organized to carry on such a real estate business, and I cannot see how the court can declare it exempt without subverting the statute.

MEMORANDUM. CULLEN, Ch. J., GRAY and O'BRIEN, JJ. (dissenting). We dissent from the decision about to be made because we believe it to be in conflict with three recent decisions of this court determining the application of the provisions of the Franchise Tax Law to investments by corporations in real estate. (*People ex rel. Singer Mfg. Co.* v. *Wemple*, 150 N. Y. 46 ; *People ex rel. Niagara River Hydraulic Co.* v. *Roberts*, 30 App. Div. 180 ; affirmed on opinion below, 157 N. Y. 676 ; *People ex rel. Fort George Realty Co.* v. *Miller*, 179 N. Y. 49.) The opinions of the majority of the court do not assume to overrule those cases, but seek to distinguish the present case from them. We think there is no such difference in circumstance in the case before us as justifies any distinction in principle. In the *Hydraulic Company* case the only property possessed by the corporation was a piece of real estate and the only business carried on by it or corporate functions exercised by it were such as proceeded from that ownership. In the *Fort George Company* case the corporation was organized for the express and sole business of acquiring, holding

and selling real estate.    Its capital was invested in lands in the city of New York from which it derived a revenue.    It was held not to be subject to the franchise tax.    The ground on which the decision proceeded is clearly stated in the opinion of the late chief judge of this court, where he said: "If capital can be invested without being employed — and we have held in two cases that it can — this case is as good an illustration of it as can be found," that is to say, that the acquisition and tenure of real estate accompanied merely by the receipts of the rent accruing therefrom is not an employment of capital within the meaning of the law.    We are unable to see that there is any distinction between the present case and the one in which Chief Judge PARKER wrote.    But if a distinction can be drawn between the cases we think it very unwise to give effect to it.    Of course, in the application of general rules of law to concrete cases, which are the subjects of litigation, the complexity of business and other relations between men is such that the courts are compelled at times to draw narrow distinctions.    In no class of cases, however, more than in the case of laws imposing taxes should the construction of a statute once adopted by the courts be firmly adhered to, and refined or subtle distinctions justified or required in other cases carefully avoided.    Otherwise, not only is the taxpayer left in doubt as to what it is his duty to pay, but necessarily the floodgates of litigation are opened wide.    We fear the result of the decision about to be made will involve the law on the subject before us in confusion.    If in our previous decisions we have erred in the construction of the statute the legislature can readily correct the error, and such correction should be sought from the legislature alone.

BARTLETT and HAIGHT, JJ., concur with VANN and WERNER, JJ.; CULLEN, Ch. J., GRAY and O'BRIEN, JJ., dissent in memorandum.

Order affirmed.