(110 App. Div. 617)

PEOPLE ex rel. HUBERT APARTMENT ASS'N v. KELSEY, Comptroller.

(Supreme Court, Appellate Division, Third Department. January 8, 1906.)

1. TAXATION—FRANCHISE TAX—CORPORATIONS TAXABLE.

A corporation whose only business is owning and managing an apartment house within the state is employing its capital stock within the state, and is taxable under Tax Law, Laws 1896, p. 856, c. 908, § 182, providing for the assessment of a franchise tax against corporations, to be computed upon the basis of the amount of their capital stock employed within the state.

2. CERTIORARI—MODE OF REVIEW—CONCLUSIVENESS OF RETURN.

In reviewing a determination by writ of certiorari, the court is bound by the return, and cannot consider allegations in the petition which are denied by the return, and in support of which no evidence was offered before the official whose determination is being reviewed.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Certiorari, § 143.] .

3. TAXATION—FRANCHISE TAX—COMPUTATION OF TAX.

Under Tax Law, Laws 1896, p. 856, c. 908, § 182, declaring corporations organized within the state subject to a tax to be computed upon the basis of the amount of their capital stock employed within the state, it is proper, in assessing the franchise tax of a corporation engaged in owning and managing a building containing apartments apportioned among the original stockholders under 50-year leases, to consider the present rental value of the property, although such rental value has increased greatly since it was built and the leases were made, in the absence of anything to show that the leases are or can be separated from the stock, and that the stockholders do not derive from their leases the benefits which, if the rents of the apartments should be increased, they would receive as dividends.

Certiorari by the people, on the relation of the Hubert Apartment Association, to review a determination made by Otto Kelsey, Comptroller of the state of New York. Determination affirmed.

This is a review by a writ of certiorari of the determination of the Comptroller fixing the amount of the franchise tax against the relator under section 182 of the Tax Law, chapter 908, p. 856, Laws 1896, the relator contending that the capital stock is not taxable for the reason that it is not employed within the state, or if taxable, that the assessment and tax are excessive and should be modified. The relator was incorporated in 1881. Its certificate declares the object of the corporation to be "the purchasing, acquiring and improving real estate for an apartment house to be leased and conducted by the corporation so formed and occupied by the stockholders thereof and others, and apportioning and distributing the same among the stockholders and members of such corporation." Its land cost $54,000; the house, $130,000. The property is mortgaged for $128,000, the stock outstanding is $85,835, and there is a floating indebtedness of $2,000. The Comptroller valued the stock at $122,000. The house has 18 apartments and 2 studios, all of which, except two apartments which are reserved for rental to outsiders, were apportioned among the 16 original stockholders under 50-year leases. There are now 15 stockholders. About half of the apartments so apportioned are now actually occupied by stockholders, and the others by the subtenants of stockholders; the association having no relations with the subtenants or to the apartments so long as the rent is paid by the stockholder. The association collects its rents, pays taxes and running expenses, which include elevator service, heating, etc., and conducts and maintains the apartment house. The rentals to be paid by the stockholders do not represent the full rental value of the apartments, but are fixed at such a sum as (with the rentals from the two reserved apartments) will meet expenses of maintenance, taxes, heating, etc. The association has no other income or property. The property is in New York City, and

has greatly increased in value since the formation of the association, and the rentals paid by the stockholders are from 20 to 25 per cent. less than the present rental value. The assessed value of the property on the New York City assessment roll is $275,000.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and KELLOGG, JJ.

Spencer, Ordway & Wierum, for relator.

The Attorney General and Horace McGuire, for Comptroller.

JOHN M. KELLOGG, J. Within the rule laid down in People ex rel. Wall & H. Street R. Co. v. Miller, 181 N. Y. 328, 73 N. E. 1102, a corporation whose only business is owning and managing an apartment house is employing its capital stock within the state and is taxable under section 182 of the tax law (Laws 1896, p. 856, c. 908). The Comptroller was therefore right in determining that the relator's capital stock is taxable.

The amount of the assessment and tax is not excessive if the value of the property of the corporation is considered with reference to its present rental value. But the relator contends that, burdened as the association is with these 50-year leases at inadequate rentals, so that at the best it can only be self-sustaining, its stock cannot be assessed at more than its par value. The question, then, is whether the stockholders get these cheap rentals solely on account of the leases, or by virtue of their being stockholders of the association. The petition alleges that the leases can be sold and transferred without reference to the stock, and that the stock has no real market value except as it accompanies one of the leases, and that in one or two cases the actual lease has become disassociated from the stock. It is unnecessary to consider the effect of those allegations, for the reason that the denial in the return puts them in issue, and no evidence was offered before the Comptroller, although the facts were peculiarly within the knowledge of the relator. This determination must proceed upon the return, and allegations in the petition denied by the return cannot be considered. People ex rel. Lester v. Eno et al., 176 N. Y. 513, 68 N. E. 868. There is no evidence tending to show that any lease is now owned separate and apart from the stock, or that any stock has been sold or is owned separate and apart from the lease, or that they can be so separated. The terms of the lease, the terms of the stock certificates, if any, and the by-laws of the association are not before us, and there is no means of definitely determining whether a stockholder may sell his lease and retain his stock or sell his stock and retain his lease.

We may fairly infer from the certificate of incorporation that, while others than stockholders may occupy the premises (either as tenants of the two apartments reserved for outsiders or as subtenants of stockholders), the intention is that the leases are apportioned and distributed among the stockholders and members of the association; and it is not a broad inference that the ownership of the lease should remain with the stock, for the lease could not have been obtained without the stock. If such is the case, then the benefits which a stockholder gets from his lease he derives as a stockholder. Such benefits, then, did not all go to the original stockholders, but accrue each year to the then stockhold-

er. They may be called "dividends" or otherwise, but they come from the association and go to the present stockholder. It is evident that if the rent of the apartments leased to the stockholders are increased 20 or 25 per cent. to their present value the association would pay a substantial dividend, and its stock would be very valuable. The stockholders, therefore, are receiving, by means of the leases, the benefits which ordinarily accrue to a stockholder under the name of dividends. In determining the value of the stock, the present rental value of the property may be considered.

The determination of the Comptroller is therefore confirmed, with $50 costs and disbursements, to be paid by the relator. All concur.