THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE
FIFTH AVENUE BUILDING COMPANY, Respondent, *v.* CLARK
WILLIAMS, as Comptroller of the State of New York,
Appellant.

Tax — when corporations, organized for purposes of buying, selling,
leasing and owning real estate and of improving it are taxable —
franchise tax upon corporation that has paid no dividend —
method of assessing such tax.

Corporations organized for the purposes of buying, selling, leasing, rent-
ing and owning real estate, and of erecting buildings and other structures
thereon, are taxable under the Tax Law, and from the moment such a
corporation begins to use its money to purchase real estate in this state
for the purposes of its incorporation, it employs its capital in this state
within the purview of the statute.

The fact that such a corporation has earned no dividends and has derived
no benefit or advantage from its capital, is not a sufficient reason for
exempting it from the payment of the franchise tax, and corporations
engaged in the buying and selling of real estate are not exceptions to
the general rule. (*People ex rel. Wall & Hanover St. Realty Co.* v.
*Miller*, 181 N. Y. 328; *People ex rel. Vandervoort Realty Co.* v. *Glynn*, 194
N. Y. 387, followed.)

For the purpose of assessing a franchise tax under sections 182 and 190 of
the former Tax Law (Cons. Laws, ch. 60, §§ 182, 190), which must be

1910.] People ex rel. Fifth Ave. B. Co. *v.* Williams. **239**

N. Y. Rep.] Statement of case.

construed together, upon a corporation that has paid no dividend, such tax should be assessed upon the actual value of its capital stock, instead of the par value thereof, although the assets of such corporation exceed its liabilities, exclusive of capital stock, but the average price at which the share stock sold during the year did not equal or exceed the par value thereof. In making such assessment the comptroller is not bound by the appraisal of the value of the capital stock made by the officers of the corporation in the report to him.

*People ex rel. Fifth Ave. Building Co.* v. *Gaus,* 136 App. Div. 164, reversed.

(Argued February 9, 1910; decided April 5, 1910.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 13, 1910, which annulled, in certiorari proceedings, a determination of the state comptroller assessing a franchise tax against the relator for the year ending October 31, 1909.

The facts, so far as material, are stated in the opinion.

*Edward R. O'Malley,* Attorney-General (*Edward H. Letchworth* of counsel), for appellant. The relator was subject to the tax as its capital stock was employed in business during the preceding year. (*People ex rel. Steinway & Sons* v. *Kelsey,* 108 App. Div. 138; *People ex rel. W. & H. S. R. Co.* v. *Miller,* 181 N. Y. 328; *People ex rel. H. A. Assn.* v. *Kelsey,* 110 App. Div. 617; 184 N. Y. 573; *People ex rel. V. R. Co.* v. *Glynn,* 194 N. Y. 387; *People ex rel. F. S. R. Co.* v. *Kelsey,* 110 App. Div. 797.) The tax was properly assessed by the comptroller upon the basis of $4,000,000. (*People ex rel. N. Y. & E. R. F. Co.* v. *Roberts,* 168 N. Y. 14; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Knight,* 173 N. Y. 255.)

*Howard Mansfield* for respondent. Under the terms of the Tax Law, employment of capital stock for profit during a given year is contemplated as the necessary basis of the franchise tax payable thereupon in advance for the privilege of doing business or exercising corporate franchises in this state during the next year. (*People ex rel. U. S. A. P. P.*

240   People ex rel. Fifth Ave. B. Co. *v.* Williams.   [April,

Opinion of the Court, per Werner, J.        [Vol. 198.

*Co.* v. *Knight,* 174 N. Y. 475 ; *People ex rel. V. R. Co.* v. *Glynn,* 194 N. Y. 387 ; *People ex rel. F. G. R. Co.* v. *Miller,* 179 N. Y. 49 ; *Braeutigam* v. *Edwards,* 38 N. J. Eq. 542.) Upon the facts of the present case the capital stock of the relator was not employed in business within this state, within the meaning of the Tax Law, during the year ending October 31, 1908. (*People ex rel. S. Mfg. Co.* v. *Wemple,* 150 N. Y. 46 ; *People ex rel. Hydraulic Co.* v. *Roberts,* 30 App. Div. 180 ; *People ex rel. N. H. Co.* v. *Roberts,* 157 N. Y. 676 ; *People ex rel. F. G. R. Co.* v. *Miller,* 179 N. Y. 49 ; *People ex rel. W. R. Co.* v. *Gaus,* 134 App. Div. 83.) Even if the relator were subject to a franchise tax for the year in question, such tax could lawfully be based only upon the actual value of its capital stock and not upon the par value. (*People ex rel. N. Y. & E. R. F. Co.* v. *Roberts,* 168 N. Y. 14 ; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Knight,* 75 App. Div. 169 ; 173 N. Y. 255 ; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Miller,* 202 U. S. 584 ; *People ex rel. Pullman Co.* v. *Glynn,* 130 App. Div. 332.)

Werner, J. The relator was incorporated on the 14th day of February, 1908, under the laws of this state and began to do business wholly within this state on February 20th of the same year. Its certificate of incorporation authorizes it " to acquire by purchase or lease, or otherwise, lands and interests in lands * * * and to erect, or cause to be erected, on any lands owned, held or occupied by the corporation, buildings or other structures, with their appurtenances * * * and to lease * * * any buildings or other structures, and any stores, shops, suites, rooms, or part of any buildings or other structures, at any time owned or held by the corporation."

The corporation was in fact organized for the express purpose of acquiring the premises fronting on the Broadway side of Madison Square in the city of New York, familiarly known as the Fifth Avenue Hotel property ; of demolishing the old building thereon and erecting in its place a modern

store and office building. During the year ending October 31, 1908, the corporation bought the premises, razed the old building and began the erection of a new structure. Its capital stock consisted of 40,000 shares of the par value of $100 per share, or a total of $4,000,000, all of which had been issued for actual property or money, and no part of which represented good will, services or other intangible assets. The comptroller assessed upon the relator a tax of $3,000, or three-fourths of a mill upon each dollar of its capital stock at its par value. Upon an application for a revision of this tax the relator claimed (1) a total exemption therefrom on the ground that none of its capital had been employed within the state during the year ending October 31, 1907, and (2) that if it were liable to any tax it must be upon the basis of the actual value of its capital employed within the state during that year and not upon its par value. In that connection the relator submitted to the comptroller a report setting forth in minute detail the condition of the corporation. Some of the statements in that report will be referred to when we reach the question upon which they are material. The comptroller declined to revise the tax, whereupon the relator sued out a writ of certiorari to review the determination of the comptroller before the Appellate Division. In that court the determination of the comptroller was reversed upon the sole ground that the relator was exempt from the tax, because no part of its capital had been employed within the state during the year ending October 31, 1907. As the case stands, therefore, it follows that if the Appellate Division was right in holding that the relator is exempt from the tax, the result must be a simple affirmance of the order from which the appeal to this court was taken. If, on the other hand, we disagree with the conclusion of the Appellate Division and hold that the relator is liable to a tax, the question still remains whether the statute authorizes the tax upon the basis fixed by the comptroller.

It must now be regarded as definitely settled by authority that corporations of the class to which the relator belongs

16

are taxable under the provisions of section 182 of the Tax Law. The cases upon which the relator relies (*People ex rel. Niagara River Hydraulic Co.* v. *Roberts,* 30 App. Div. 180 ; affd., 157 N. Y. 676 ; *People ex rel. Fort George Realty Co.* v. *Miller,* 179 N. Y. 49 ; *People ex rel. Singer Mfg. Co.* v. *Wemple,* 150 id. 46) are not in point, as has been shown in the more recent decisions of this court. (*People ex rel. Wall & Hanover Street Realty Co.* v. *Miller,* 181 N. Y. 328 ; *People ex rel. Vandervoort Realty Co.* v. *Glynn,* 194 i.l. 387.) It would serve no useful purpose to reiterate the discussions of these last cited cases in which the distinctions between them and the earlier cases referred to were fully considered. For present purposes it is enough to say that this court is now committed to the doctrine that corporations organized for the purposes of buying, selling, leasing, renting and owning real estate, and of erecting buildings or other structures thereon are taxable under the Tax Law as it now stands. That general proposition is not controverted by counsel for the relator, and is in terms admitted in the opinion of the court below, but it is argued that it has no application to the case at bar because during the year 1907 none of the relator's capital was employed within this state. That argument is based upon the premise that during the year mentioned the relator had simply invested its capital in unproductive real estate from which it had removed old buildings for the purpose of erecting modern structures ; that when the latter was finished and rented so as to yield an income on the money invested, and not until then, could the relator be said to have fairly entered upon the business for which it was organized ; that not until that stage of its operations had been reached could the relator be held to have its capital *employed* in this state within the meaning of the statute. We can find in the statute no authority for this reasoning, and we think there is nothing in the character of the relator's business to warrant it. From the moment when the relator began to use its money to purchase real estate for the purposes of its incorporation it employed its capital in this state within the purview of the

1910.]   People ex rel. Fifth Ave. B. Co. v. Williams.   243

N. Y. Rep.]      Opinion of the Court, per Werner, J.

statute. That is the rule which has been applied to corporations engaged in other kinds of business, and we find nothing in the statute which indicates a contrary legislative intention as to corporations organized for the purpose of purchasing, owning and improving real estate. The learned Appellate Division based its decision upon the consideration that the relator during the year ending October 31, 1907, "had earned no dividends and had as yet derived no benefit or advantage from its capital." This suggestion, it seems to us, ignores the very question which underlies this controversy. The statute clearly provides for the taxation of corporations which neither earn nor declare dividends, and the real question is, upon which basis shall such corporations be taxed? Every business corporation has to go through an initial and formative period in which there is a constant outlay of capital with no prospect of immediate return, and many embark upon ventures which never prove successful; but that has never been regarded as a sufficient reason for exempting from this tax such corporations as may be engaged in the various fields of commercial enterprise outside of operations in real estate. We find nothing in the statute to indicate that corporations engaged in buying and selling real estate are an exception to the general rule. As we have said, however, this question has been definitely disposed of in the two most recent expressions upon the subject in this court.

In *People ex rel. Wall & Hanover Street Realty Co.* v. *Miller* (*supra*) Judge Vann expressed the views of a majority of the court as follows: "The claim is made that the large amount thus paid for a building * * * is not capital employed within this state, but is an inactive investment and that the relator is not carrying on any business in this state. It does business in no other state and it has no surplus. While a foreign corporation may invest its surplus earnings in real property situate in this state and lease the same to third parties, so long as it does not occupy it or use it in transacting its ordinary business, the amount thus invested is apparently not subject to taxation as capital employed in doing business. When,

however, it has no surplus and all its capital is placed in a single venture which requires active management and constitutes its sole business, such capital is employed in business within the fair meaning of the statute now in force, which is more comprehensive than any of its predecessors." (p. 335.) Again, in *People ex rel. Vandervoort Realty Co.* v. *Glynn* (*supra*), Judge Willard Bartlett wrote for a unanimous court and said : " The capital stock of the relator is *employed* rather than invested. It is being used for the precise purpose specified in the certificate of incorporation.   *   *   *   The capital stock has been applied to the very use contemplated by the incorporators as the object of the organization.   If this is not the employment of the capital stock, then it is impossible to conceive how the capital stock of such a corporation can ever be regarded as being employed at all." (p. 390.)   There is nothing to distinguish these cases from the case at bar, except that there the corporations purchased properties which were immediately productive of rentals, while here there was no prospect of income until the new structure would be rented.   That is a mere detail, however, which cannot affect the principle that the latter, no less than the former, was employing its capital within this state in the conduct of the only business for which it was organized.   Upon this branch of the case, which was the only one considered by the Appellate Division, we must reverse the order of that court and affirm the determination of the comptroller.   This result does not dispose of the appeal, however, but compels us to pass upon the construction of those sections of the statute which prescribe the basis and method to be employed in assessing the franchise tax.

The question is whether the relator is to be taxed at the rate of three-quarters of a mill upon each dollar of its capital stock at its par value, or at that rate upon the actual value of its capital stock.   The learned attorney-general contends that section 182 of the Franchise Tax Law, as amended by chapter 474, Laws of 1906, contains a clear and explicit direction that corporations whose " assets do not exceed the liabilities exclusive of capital stock," or whose stock

has sold at an average price during the year which "did
not equal or exceed its par value," or which have declared no
dividend, shall be taxed at three-quarters of a mill upon each
dollar of their capital stock at its par value.  It may be con-
ceded that the language of this section, taken by itself, is
capable of that construction, but it is by no means clear and
explicit.  That portion of the section which follows the part
which we have paraphrased reads as follows: "Then each ·
dollar of the amount of capital stock employed in this state,
determined as hereinbefore provided, shall be taxed at the
rate of three-fourths of one mill."  When we refer to the
preceding part of the section, which in general terms provides
for the tax, we see that it throws no light upon the part just
quoted, for it simply enacts that the corporations enumerated
"shall pay to the state treasurer annually, in advance, an annual
tax to be computed upon the basis of the amount of its capital
stock, employed during the preceding year within this state, and
upon each dollar of such amount."  Neither in this general
statement, nor in the language applicable to corporations of
the class to which the relator belongs, do we find any definite
declaration that non-dividend paying corporations whose assets
do not exceed their liabilities, exclusive of capital stock, or
whose stock has been sold during the year at an average
price which does not equal or exceed its par value, shall be
taxed upon the basis of the par value of their capital stock.
This is practically conceded by the learned attorney-general,
but he argues that other portions of section 182 disclose the
legislative intent.  He calls our attention to the fact that cor-
porations which pay dividends amounting to six per centum
or more upon their capital stock are first placed in a class by
themselves.  They are taxed at the rate of one-quarter of a
mill for each one per centum of dividends made or declared
upon the par value of the capital stock during the preceding
year.  Next the statute proceeds to deal with corporations
of the second class, to which the relator belongs, which are
distinguished (1) by an excess of liabilities over assets, exclu-
sive of capital stock; (2) by an average sale price of its stock

during the year which did not equal or exceed its par value; and (3) by non-payment of dividends. Then there follows the provision as to corporations of the third class which are characterized (1) by dividends of less than six per centum on the par value of the capital stock; (2) by assets in excess of liabilities, exclusive of capital stock, to an amount equal to or greater than the par value of the capital stock; and (3) an average sale price of the stock during the year equal to or greater than the par value. As to this third class of corporations the section provides that " the amount of the capital stock, determined as hereinbefore provided to be employed in this state, shall be taxed at the rate of one and one-half mills on each dollar *of the valuation* of the capital stock employed in this state, but such valuation shall not be less than (1) the par value of such stock, (2) the difference between the assets and liabilities, exclusive of capital stock, (3) the average price at which such stock sold during said year." This last paragraph indicates, of course, that as to the corporations of the third class or division, the tax of one and one-half mills is to be based upon the value of the stock, as distinguished from the par value, and it may be assumed that this is because the valuation cannot be less than the par value. From this the learned attorney-general argues that the direction for valuation of the capital stocks of corporations of the third class, and the absence of such direction in that paragraph of the section which relates to corporations of the second class, discloses the legislative intent to tax the latter upon the basis of the par value of its capital stock. While the argument is not without force, it is obviously inconclusive. Upon principle there is no greater reason for a *valuation* of a capital stock that is worth more than par than there is for a *valuation* of one that is worth less than par. But even if we concede that this difference in the phrasing of the two subdivisions of the same section is indicative of an intent to tax non-dividend paying corporations with impaired capital upon the basis of the par value of their capital stock, we cannot escape the conviction that a very simple idea which might

1910.]  People ex rel. Fifth Ave. B. Co. *v.* Williams.  247

N. Y. Rep.]     Opinion of the Court, per Werner, J.

have been framed in very plain language has been obscured in a mass of verbiage much better calculated to conceal than reveal the true intent. Nor is this the only difficulty which we encounter in construing this statute. It is an elementary canon of construction that statutes consisting of several parts relating to a common subject must be read as a whole and construed together. (*People ex rel. N. Y. C. & H. R. R. R. Co. v. Knight*, 173 N. Y. 255 ; *People ex rel. Killeen* v. *Angle*, 109 N. Y. 564; *People* v. *McGloin*, 91 N. Y. 241, 250; *Matter of N. Y. & B. Bridge*, 72 N. Y. 527, 529.) Section 190 of the Franchise Tax Law, as it stood in 1907, provided that "If the dividend or dividends amount to less than six per centum on the par value of the capital stock, *or no dividend is declared*, the president, treasurer or secretary of the company liable to pay a tax under the provisions of section one hundred and eighty-two of this chapter, shall, under oath, between the first and fifteenth days of November, in each year, *estimate and appraise the capital stock of such company at its actual value*." (L. 1907, ch. 734.) To what class of corporations does this section apply, if not to the class to which the relator belongs ? We can think of none, and unless we hold this latter section to be of no effect, it must be read in *pari materia* with section 182. If the two are inconsistent with each other, the plainest principles of justice require us to give the relator the benefit of the section most favorable to it. In *People ex rel. Mutual Trust Co.* v. *Miller* (177 N. Y. 51) we said : " A statute which levies a tax is to be construed most strongly against the government and in favor of the citizen. The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax." (p. 57.) Beyond all this, we are concluded by a previous decision which was made at a time when section 190, which has been several times amended, was in substantially the same form as it stands to-day. In the case of *People ex rel. New York & East River Ferry Co.* v. *Roberts* (168 N. Y. 14) we had occasion to construe section 182 as affecting corporations paying

dividends of less than six per centum. Under the section as it then stood the attorney-general contended that the tax was to be assessed upon the par value of the capital stock, while the relator in that case claimed that it should be assessed upon the basis of the actual or appraised value of its capital stock. There, as here, this court was in doubt as to the true meaning of section 182, and, in considering the effect of section 190, reached the conclusion that, by reading both together, the tax was to be assessed upon the actual value of the capital stock rather than upon the par value.

It is a coincidence which cannot escape notice that, although section 190 seems to have been amended in 1906 so as to obviate the difficulties suggested in the *East River Ferry* case, it was in 1907 restored to substantially the same form in which this court found it when considering the case last cited, and so it stands to-day. As a study in the mutations of legis- lation, it might be interesting to trace minutely the various amendments of the two sections under consideration, but it would tend to confuse rather than to clarify the question before us. So we leave the matter with the suggestion that, since it is easily possible to frame a statute providing that non- dividend paying corporations whose liabilities exceed their assets, and whose stocks sell at prices which do not exceed or equal their par value, shall be taxed upon the basis of the par value of such stocks, we should not indulge in strained or doubtful constructions of ambiguous statutes in favor of the state. This leads to the conclusion that, under sections 182 and 190 as read together, corporations of the class to which the relator belongs are to be taxed upon the basis of the actual value of their capital stocks and not upon their par value. In arriving at this conclusion we have not overlooked the so-called " drag net " clause of section 182, as amended in 1907. We do not quote or discuss it because it seems to be conceded that it has no application to this case.

We have still to consider whether the tax assessed upon the relator can be upheld upon the theory that the actual value, rather than the par value of the capital stock is the true basis

for the tax. It is obvious that the comptroller did not value or appraise the relator's capital stock. He levied the tax upon the basis of the par value thereof. Therefore the tax as assessed cannot stand. It is equally clear that the comptroller is not bound by the arbitrary and insufficient appraisal of the relator's vice-president. This can easily be demonstrated by the reproduction of a few figures from the report of the relator to the comptroller. The capitalization of the company is $4,000,000. This was all contributed in actual property or in cash. Its total assets were $6,810,000, and its total liabilities were $5,230,000, leaving an apparent excess of assets over liabilities of $1,580,000. We need go no further to show that if this represented the true state of the relator's financial condition, its capital stock was worth more than $10 per share, which was the valuation placed upon it by the relator's vice-president. Upon that showing the comptroller was clearly justified in refusing to accept the relator's valuation. Under the circumstances the case must go back to the comptroller for a re-assessment of the tax.

The order of the Appellate Division should be reversed and the determination of the comptroller annulled, without costs of the appeal to either party, and proceedings remitted to the comptroller for a re-assessment of the tax.

Vann, J. (dissenting). I agree with Judge Werner that corporations of the class to which the relator belongs are taxable under section 182 of the Tax Law, and I concur in all that he has said on that subject.

I do not concur in his conclusion or reasoning upon the question whether the relator should be taxed at the rate of three-quarters of a mill upon each dollar of its capital stock at its par value, or at that rate upon each dollar of its actual value. I think it should be taxed at the rate named on the par value of its capital stock, and I have expressed my reasons for this conclusion in an opinion filed in a case, decided herewith, involving the same question. (*People ex rel. New York Mail & N. Transportation Co.* v. *Gaus*, 198 N. Y. 250.)

The order of the Appellate Division should be reversed, the determination of the comptroller confirmed and the writ of certiorari dismissed, with costs in both courts.

CULLEN, Ch. J., HAIGHT and WILLARD BARTLETT, JJ., concur with WERNER, J.; HISCOCK and CHASE, JJ., concur with VANN, J.

Order reversed, etc. _____