(174 App. Div. 344)

PEOPLE ex rel. RIDGEWOOD LAND & IMPROVEMENT CO. v. SAXE et al., State Tax Commission.

(Supreme Court, Appellate Division, Third Department. September 13, 1916.)

TAXATION ☞123—CORPORATION—DOING BUSINESS—REPAYMENT OF CAPITAL —"DIVIDEND"—"EMPLOYED."

Tax Law (Consol. Laws, c. 60) § 182, provides that for the privilege of doing business every corporation shall pay a tax, to be computed on the amount of its capital stock employed during the preceding year within the state, and section 180 prescribes the tax on the franchise to be a corporation. Stock Corporation Law (Consol. Laws, c. 59) § 28, provides that a stock corporation shall not make dividends, except from the surplus profits from its business, or divide any part of its capital stock, though it may distribute its assets; and General Corporation Law (Consol. Laws, c. 23) § 11, authorizes a corporation to purchase, hold, and dispose of such property as its purposes shall require. Relator was incorporated for the purchasing, selling, and improvement of real estate, and carried on such business till it disposed of all its realty, receiving payment in cash and in a purchase-money mortgage, and since 1912 such mortgage was its only property, and during the year ending October 31, 1913, there was paid on it a certain amount as principal and a certain amount as interest, from which it had declared dividends of 8 per cent. on its capital stock. *Held*, that the Tax Law and the General Corporation Law used the word "dividend" in the same sense; that the word "dividend" referred to dividends growing out of the use of the capital stock, and not to the distribution of capital stock; that the relator's capital was not "employed" in the state; that, if regarded as interest, the distribution was not a dividend; and that relator should be relieved from the tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 222; Dec. Dig. ☞123.

For other definitions, see Words and Phrases, First and Second Series, Dividend; Employed.]

Kellogg, P. J., dissenting.

---

Certiorari by the People of the State of New York, on the relation of the Ridgewood Land & Improvement Company, to review the determination of Martin Saxe and others, as the State Tax Commission of the State of New York. Determination reversed, and relator relieved from the tax.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Theodore L. Frothingham, of New York City, for relator.

Egburt E. Woodbury, Atty. Gen. (Franklin Kennedy, Deputy Atty. Gen., of counsel), for defendants.

WOODWARD, J. In November, 1887, the Ridgewood Land & Improvement Company was incorporated for the purpose, as declared in its charter, of "purchasing, taking and possessing real estate and buildings, and selling, leasing and improving the same." The corporation was organized under the provisions of the act of 1848 and the amendments thereto, and is a stock corporation, the object above quoted being the only one recited in its articles of incorporation. The original capital stock was $100,000, and this was subsequently increased to $200,000. There is no question that the corporation invested its money in real estate and carried on business in buying and selling land, and at one time it constructed a grand stand upon one of the parcels owed by it and rented the same for a baseball park. In or about the year 1906 the corporation disposed of all its real estate and buildings, receiving payment therefor partly in cash and partly in purchase-money mortgages. The cash received on such sales was distributed among the stockholders of the corporation, and since the year 1906 the company has been engaged in collecting the sums due on the said mortgages and distributing the same among the stockholders of the corporation. Since the year 1912 the only property owned by the corporation has been a purchase-money mortgage covering a parcel of land on the south side of Liberty avenue, in the borough of Queens. This mortgage was for the sum of $300,000, payable June 11, 1911, with interest at 6 per cent., and on the 31st day of October, 1913, there was due and payable upon said mortgage the sum of $191,-900. During the year ending October 31, 1913, there had been paid upon said mortgage the sum of $39,660 of principal, and $13,874.75 interest, making a total of $53,534.75, and the question presented in this proceeding is whether the state comptroller, and his successor, the state tax commission, was authorized to levy a tax upon the relator under the provisions of section 182 of the Tax Law. A tax of $400 has been assessed against the corporation, and certiorari has been instituted to inquire into the legality of such assessment.

The comptroller found that for the year ending October 31, 1913, the year upon which the tax was based for the purpose of measuring the tax for the year 1914, the relator had made or declared dividends of 8 per cent. on its capital stock of $200,000. Under the provisions of section 182 of the Tax Law such a dividend is taxable at a quarter of a mill on each 1 per cent. of dividends, and if these distributions of money were in fact dividends, within the meaning of the Tax Law,

the amount of the tax would be $400, as determined by the comptroller. The comptroller arrived at his conclusions by showing that the amount of principal and interest received was $53,534.75, and that the corporation, during the year ending October 31, 1913, had distributed the sum of $56,000, or $2,465.25 in excess of the receipts of the particular year; the treasurer of the corporation explaining that this excess was "made up from an excess of receipts over distributions during the previous year." In other words, the corporation evidently distributed the moneys coming in from this mortgage in even figures, retaining the odds and ends and paying them out subsequently.

It is very evident from a practical point of view that the Ridgewood Land & Improvement Company has served its purpose; that it was organized to deal in real estate in a given locality, and when the possibilities of that locality had been exploited, and the property all disposed of, it was merely a question of distributing the proceeds of the business, including the capital stock, to the original investors. While the corporation was created to continue for a period of 50 years, it is entirely evident that there was no obligation to continue in active business for that period of time, nor is any consideration of public policy suggested why the corporation should not be voluntarily liquidated and the capital distributed among its stockholders. Concededly this work of liquidation has been going on since the year 1906, and it had reached a point in the year 1913 when nearly $10,000 of the capital stock had been restored to the holders in cash, and the real question here is whether the company, which had not been formally dissolved, in distributing portions of the original capital to the investors, was distributing dividends within the meaning of the Tax Law—whether it was doing business in the sense contemplated by the enactment here under consideration.

Section 182 of the Tax Law, in so far as it is necessary to be considered here, provides that:

"For the privilege of doing business or exercising its corporate franchises in this state every corporation, joint-stock company or association, doing business in this state, shall pay to the state treasurer annually, in advance, an annual tax to be computed upon the basis of the amount of its capital stock, employed during the preceding year within this state, and upon each dollar of such amount. The measure of the amount of capital stock employed in this state shall be such a portion of the issued capital stock as the gross assets employed in any business within this state bear to the gross assets wherever employed in business. For purposes of taxation, the capital of a corporation invested in the stock of another corporation shall be deemed to be assets located where the physical property represented by such stock is located. If the dividends upon the capital stock amount to six, or more than six per centum upon the par value of the capital stock, during any year ending with the thirty-first day of October, the tax shall be at the rate of one-quarter of a mill for each one per centum of dividends made or declared upon the par value of the capital stock during said year."

This is the section under which the relator has been assessed, and we are to determine what is meant by the word "dividend" as used in the above-quoted statute; for if there were no dividends declared, if the corporation was not doing business in the state, then the tax

is without warrant of law and should not be collected. If we examine the scheme of the Tax Law, we shall discover that it recognizes two characters of franchises which are to be taxed upon different theories: There is the franchise to be a corporation, which is called upon to pay a tax of one-twentieth of 1 per centum for the privilege of being organized (section 180, Tax Law, with special provisions for foreign corporations doing business in this state [section 181]); and then there is the franchise to do the business for which the corporation is organized, and this is subject to an annual tax as above pointed out. The first of these taxes is a net sum, covering the full period of the corporate life, be that period long or short, while the second is of annual occurrence. When the relator was organized, therefore, it paid a tax upon its right to be a corporation for the period of 50 years; its existence, however inert, was provided for, and the privilege was paid for. It had a valid right to just exist without any further action for the period of its chartered incorporation; but its right of "purchasing, taking, holding, and possessing real estate and buildings, and selling, leasing, and improving the same," was subject to a further tax "computed upon the basis of the amount of its capital stock, employed during the preceding year within this state, and upon each dollar of such amount." This franchise to do is distinct from the franchise to be, and is taxed upon a different theory, just as much as the individual who is assessed a poll tax is subject to a different theory of taxation from that which attaches to him as the owner of specific property.

The state recognizes that a corporation may be organized and have the right of being, but that it may never do any business, or that it may do business for a limited period; and it provides, first, for taxing the privilege extended to individuals to avail themselves of corporate forms, and then levies a special tax upon this method of doing business, and when it makes the measure of this tax to depend upon the amount of dividends "made or declared upon the capital stock during said year," it obviously does not intend to levy this tax upon distributions made out of the capital stock of a corporation which has ceased to exercise the corporate powers with which it is vested. The tax is "for the privilege of doing business or exercising its corporate franchises in this state" (section 182), and when it refers to the "dividends made or declared upon the par value of the capital stock," the statute refers naturally to the dividends growing out of the use of the capital stock, and has no reference to the action of the corporation in distributing its capital to its stockholders when all of the debts have been paid and the purposes of the incorporation are at an end.

This view becomes certain when we read the provisions of section 28 of the Stock Corporation Law, which provides that:

"The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation, nor divide, withdraw or in any way pay to the stockholders or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law. * * * But this section shall not prevent a division and distribution of the assets of any such corporation remaining after the payment of all its debts and liabilities upon the dissolution of such corporation or the expiration of its charter," etc.

The Legislature forbids the making of dividends except from the surplus profits arising from the business of such corporation, and speaks intelligently of the "division and distribution of the assets," and these two statutes, dealing with the power to make dividends and the taxation of the capital stock based upon 'the making or declaring ,of dividends, are to be understood as using the word "dividend" in the same sense, unless the context clearly points to the contrary. Perkins v. Smith, 116 N. Y. 441, 23 N. E. 21. Action forbidden by statute is void and a void act is no act. Village of Ft. Edward v. Fish, 156 N. Y. 363, 374, 50 N. E. 973; Baillargeon v. Dumoulin, 165 App. Div. 730, 733, 151 N. Y. Supp. 112. There could be no dividends, in the sense of surplus profits arising from the business of the corporation, for there was no "purchasing, taking, holding, and possessing real estate and ·buildings, and selling, leasing and improving the same." There was merely a division and distribution of a portion of the capital of the corporation, long after it had ceased to do business. It held a purchase-money mortgage, and its only activity consisted in collecting the money and distributing it among the stockholders. It was in no sense "surplus profits arising from the business" of the corporation in the year ending October 31, 1913; it was a division and distribution of the capital.

The corporation had a right to remain in existence for the purpose of reducing its capital to cash and distributing the same, and this was not doing business nor exercising the corporate franchises of the corporation, within the meaning of section 182 of the Tax Law, which merely intended to compel contribution on the part of those corporations which should continue to do the business contemplated by their charters and make surplus profits from which dividends could be made or declared, or which came within the later subdivisions of section 182. While the case is not entirely in point, we are of the opinion that the result reached here is in harmony with People ex rel. Lehigh & New York R. R. Co. v. Sohmer, 217 N. Y. 443, 112 N. E. 181, and that the comptroller erred in holding the relator to be subject to the tax assessed against it.

But the suggestion is made that the determination of the question does not turn upon the meaning of the word "dividend"; that the Court of Appeals having held in People ex rel. Fifth Avenue Building Co. v. Williams, 198 N. Y. 238, 91 N. E. 638, 139 Am. St. Rep. 809, that the statute provides for the taxation of corporations which neither earn nor declare dividends, the real question is whether the capital stock has been "employed" within this state; and that if it has been so employed then a tax is due of some kind, irrespective of any question of dividends. There can be no doubt, either in reason or authority, that People ex rel. Fifth Avenue Building Co. v. Williams, supra, was properly decided. The court in that case held that a corporation created "to acquire by purchase or lease, or otherwise, lands and interests in lands  *  *  *  and to erect, or cause to be erected, on any lands owned, held or occupied by the corporation, buildings or other structures, with their appurtenances  *  *  *  and to lease  *  *  *  any buildings or other structures, and any  *  *  *

shops, suites, rooms, or part of any buildings or other structures, at any time owned or held by the corporation," was subject to a tax under the provisions of section 182 of the Tax Law, during the period that the capital of the company was being used in tearing down and preparing the premises for the construction of the buildings.  Obviously this was a proper holding; the company was employing its capital in preparing to earn an income, in exactly the same sense that a manufacturing corporation would be employing its capital in the erection of a plant and putting in the machinery.  But the court likewise held in the same case that the assessment of the comptroller, based upon the par value of the stock, rather than upon an appraised value, could not stand, and the determination of the comptroller was reversed.  198 N. Y. 249, 91 N. E. 638, 139 Am. St. Rep. 809.

In the case now under consideration the comptroller rendered a bill to the relator:

"For tax on franchise or business, based on dividends on capital stock employed in New York state during the year ending October 31, 1913, but payable in advance as provided by section 182, chapter 60 of the Consolidated Laws; dividends, 6 per cent. of capital stock of $200,000; tax 2 mills (¼ mill for each one per cent. of dividends), $400."

It was this determination of the comptroller which the relator asked to have corrected, and upon a correction being denied the writ of certiorari was sued out to get relief.  The only question before this court is whether the tax which has been assessed against the relator is a legal tax, and this question must depend upon whether the relator has declared a dividend of 8 per cent. upon its capital stock, and the fact, if it is a fact, that the relator might have been assessed for some other tax, or for some other amount, because of the employment of capital within this state, is of no consequence.  The question on review here is the assessment of a tax upon an alleged dividend of 8 per cent. upon the capital stock of the relator, and we have demonstrated that no such dividend has been declared, and that is sufficient for the determination of the question presented by the record now before us.

Upon the broader question of whether the capital of the relator was employed in this state, we are not persuaded that the mere holding of a purchase-money mortgage, and the distribution of the principal and interest as it is collected, constitutes doing the business for which the relator was incorporated.  It has authority, under its franchise to be a corporation, to "acquire by grant, gift, purchase, devise or bequest, to hold and to dispose of such property as the purposes of the corporation shall require, subject to such limitations as may be prescribed by law" (General Corporation Law, § 11), and this power would seem to be sufficient to warrant the corporation in holding a purchase-money mortgage during the time that it was necessary to collect the principal and interest, without being held to be exercising its franchise to do the things which were specially permitted to it under its charter.  At least we are unable to see any clear distinction between the case at bar and that of Lehigh & New York R. R. Co. v. Sohmer, 217 N. Y. 443, 112 N. E. 181, so far as this particular point is con-

cerned, and we are disposed to leave the distinction, if one is to be made, to the Court of Appeals.

The further suggestion is made that the amount distributed by the relator was interest, and not a part of the capital, and that this has some important bearing upon the question at issue. But the theory of the Tax Law should be considered; it is its purpose to tax the use of capital in the prosecution of the business for which the corporation was organized, and the purpose of this corporation was "purchasing, taking and possessing real estate and buildings, and selling, leasing and improving the same." The company had bought real estate and buildings; it had sold real estate and buildings; it had leased and improved such real estate; but finally it reached a point where it sold all its property. No one doubts that, if it had taken the cash for the same and deposited it in a bank, it would have ceased to use its capital in this state in "purchasing, taking, and possessing real estate and buildings, and selling, leasing, and improving same," and it would hardly have occurred to judicial astuteness that paying over the interest on this fund to the stockholders constituted the payment of dividends upon the capital used in this state.

The case is not different in principle from that which is presented here. The business for which the corporation was organized was terminated when it had disposed of the land which it owned; it was in no sense doing business in merely awaiting the termination of the period of payment, simply because it paid over the income of the deferred payments. It paid back to its stockholders $39,660 of principal and $13,874.75 of interest upon the deferred sum, and as the capital of $200,000 was entirely represented by this single bond and mortgage, on which there was due the sum of $191,900 on the 31st day of October, 1913, the interest which was paid over could in no wise be construed as surplus profits translated into dividends. The board of directors had ceased to manage the affairs of the corporation in "purchasing, taking, and possessing real estate," and it was merely distributing the funds in its hands to the stockholders as fast as it was made available under the terms of the sale of the premises. To call this employing its capital within this state, or doing business, or to determine that the distribution of the principal and interest on this bond and mortgage was a declaration of dividends, is to give a forced construction to language for the purpose of enlarging the operation of a taxing statute beyond the scope fairly indicated by the language of the Legislature, and this cannot be justified under any rule with which we are familiar.

The determination of the state tax commission should be reversed, and the relator should be relieved from the tax. All concur (COCHRANE, J., in result), except KELLOGG, P. J., who dissents.